EDMOND FAHEY *v.* CHARLOTTE C. CLARK ET AL.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, JS.

Argued November 2—decided December 7, 1938.

*Robert J. Woodruff* and *Charles G. Albom,* for the appellants (defendants).

*John J. Cullinan,* for the appellee (plaintiff).

JENNINGS, J. The plaintiff, a pedestrian crossing Stratford Avenue in Stratford, was struck and injured by an automobile driven by the named defendant and owned by the other. There were thirty-six assignments of error, only seven of which are pursued on the defendants' brief. This course of action, especially without notice to the plaintiff, placed an undue burden on him in briefing the case for this court.

Since we feel bound to send the case back for a new trial because of an important ruling on evidence, our discussion of the case is confined to that point. The other rulings on evidence were obviously within the discretionary power of the trial court. The assignments of error directed to the charge do not raise questions likely to cause difficulty on a new trial.

The present accident occurred August 12, 1937. The plaintiff had been previously injured in an automobile accident in 1914. During cross-examination of the plaintiff by counsel for the defendants, an attempt was made to elicit from the plaintiff information as to the character and seriousness of the injuries sustained in the first accident for the purpose of showing that they probably affected him at the time of the injury of 1937. Most of these questions were excluded, little information was obtained and further inquiry was discouraged in no uncertain terms. Counsel for the defendants nevertheless pressed his examination and thereupon the court ruled that no further questions could be asked of the plaintiff about the former accident unless counsel for the defendants would claim in good faith "that some of his injuries are the result of

a prior accident." Mr. Woodruff: "I cannot make that claim as I don't know about it." The court: "Then we won't spend time on it." An exception to this ruling was taken.

The extent of and limitations on cross-examination were defined by Chief Justice Wheeler in *Bishop* v. *Copp*, 96 Conn. 571, 574, 114 Atl. 682, in the following language: "We fully approve of the trial court restricting the examination of witnesses to evidence which is competent, material and relevant; and when the examination has been carried as far as will serve to develop the issues involved and aid the search for the truth, we approve of the trial court curtailing the length and the limit of examinations. To do this so as not to unduly restrict the examination and at the same time not permit it to be stretched to unseemly limits, requires the exercise of the wisest discretion and the highest judgment of the trial court. . . . The test of cross-examination is the highest and most indispensable test known to the law for the discovery of truth. Professor Wigmore summarizes our own conviction and experience, when he says: 'For two centuries past, the policy of the Anglo-American system of evidence has been to regard the necessity of testing by cross-examination as a vital feature of the law. The belief that no safeguard for testing the value of human statements is comparable to that furnished by cross-examination, and the conviction that no statement (unless by special exception) should be used as testimony until it has been probed and sublimated by that test, has found increasing strength in lengthening experience.' 2 Wigmore on Evidence, § 1367." See also *Gorman* v. *Fitts*, 80 Conn. 531, 534, 535, 69 Atl. 357. The rule in other jurisdictions is the same. "As a general rule, the extent of a cross-examination is much in the discretion of the

judge, yet it should be liberally allowed. In a clear case of its abuse, a new trial should be granted." *Ross* v. *Ackerman,* 46 N. Y. 210, 211. See further citations infra.

These statements are, of course, in very general terms. It remains to apply them to the particular facts of this case. The trial judge described the attempted cross-examination as a "fishing expedition." Such an expedition has no definite objective and the court has considerable control over it. The examination under consideration, on the contrary, had a very definite and proper objective. In order to recover, the plaintiff had the burden of proving, among other things, his damages. *Gold* v. *Ives,* 29 Conn. 119, 124; *Rumberg* v. *Cutler,* 86 Conn. 9, 14, 84 Atl. 107; *Barlow Brothers Co.* v. *Gager,* 113 Conn. 429, 442, 155 Atl. 628. The excerpt in the finding shows that he had testified as to his injuries. This testimony was relevant to one of the main issues in the case. The defendant had a perfect right to cross-examine him as to those injuries and the plaintiff was practically the only source of information open to him as to the effect of the prior injury. *Atwood* v. *Connecticut Co.,* 82 Conn. 539, 546, 74 Atl. 899. All the defendant wanted was the fact. If the cross-examination developed that the prior injury was entirely cured and had no bearing on the present injuries, the defendant would presumably have had to take this answer. If, however, he could have developed a residual effect of the prior injury on the present one, it might have materially reduced the amount of the verdict. "A fair and full cross-examination of a witness upon the subjects of his examination in chief is the absolute right, and not the mere privilege, of the party against whom he is called, and a denial of this right is a prejudicial and fatal error.

It is only after the right has been substantially and fairly exercised that the allowance of cross-examination becomes discretionary with the trial court." *Resurrection Gold Mining Co.* v. *Fortune Gold Mining Co.*, 64 C. C. A. 180, 186, 129 Fed. 668, 674.

The colloquy quoted shows that the trial judge did not absolutely stop the cross-examination but required as a condition of its continuance that counsel for the defendant should claim in good faith that some of the present injuries were the effect of the prior accident. This was an unreasonable demand. As stated, the defendant was cross-examining on a claim made in chief and was entitled to fully develop the subject. As far as appears from the record, the required claim could not have been honestly made. On direct examination, where the relevancy or materiality of an inquiry does not appear, the trial court may properly require from counsel a statement of the evidence he expects to elicit and of circumstances which will show it to be material and relevant. On cross-examination, if it does not reasonably appear that the evidence sought may be relevant and material, the court may in its discretion require of counsel a sufficient intimation of the purpose to be served; but, as stated by Christiancy, J., in *Campau* v. *Dewey*, 9 Mich. 381, 422, "nothing further than a bare intimation should generally be required. For, in many cases, to state the precise object of a cross-examination would be to defeat it." *Hyland* v. *Milner*, 99 Ind. 308, 310; *Martin* v. *Elden*, 32 Ohio St. 282, 289. These and many other cases in point are collected in a note to *Prout* v. *Bernards Land & Sand Co.*, 25 L. R. A. (N. S.) 683 (77 N. J. L. 719, 73 Atl. 486). See also 5 Jones, Evidence (2d Ed.) §§ 2333, 2334; 70 C. J. 682; 28 R. C. L. 605, 607.

We feel constrained to hold that this limitation on the cross-examination was an abuse of discretion.

There is error and a new trial is ordered.

In this opinion the other judges concurred.