RICHARD JUCHNIEWICZ, EXECUTOR (ESTATE OF
PATRICIA JUCHNIEWICZ), ET AL. *v.* BRIDGEPORT
HOSPITAL ET AL.
(AC 23877)

Foti, Bishop and McLachlan, Js.

Argued September 10—officially released December 7, 2004

*Carey B. Reilly*, for the appellant (named plaintiff).

*Kevin M. Tepas*, for the appellee (defendant Frank Spano).

*Opinion*

BISHOP, J. The named plaintiff, Richard Juchniewicz, executor of the estate of his late wife, Patricia Juchniewicz (plaintiff's decedent), appeals from the judgment of the trial court rendered after the jury verdict in favor of the defendant Frank Spano, a physician.[1] On appeal, the plaintiff claims that the court improperly (1) failed to instruct the jury that the plaintiff's decedent was presumed to be in the exercise of reasonable care at the time of her death, (2) failed to charge the jury on contributory negligence and to require the defendant to plead contributory negligence, and (3) denied the plaintiff's motion in limine to preclude the defendant from introducing any evidence of the contributory negligence of the plaintiff's decedent. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On Friday, December 8, 1995, while employed as a nurse at Bridgeport Hospital, the plaintiff's decedent became sick with a fever and chills. Because her regular physician was unavailable, she telephoned the defen-

---

[1] The initial complaint included claims by the named plaintiff and by William Juchniewicz, the son of the named plaintiff's decedent, individually, against Spano and the defendant Bridgeport Hospital. The individual claims subsequently were withdrawn. Additionally, the claims against Bridgeport Hospital were withdrawn on November 8, 2002. We therefore refer in this opinion to Spano as the defendant and to the named plaintiff as the plaintiff.

dant. After learning her symptoms, the defendant instructed the plaintiff's decedent either to come to his office or to go to the emergency room at Bridgeport Hospital. The plaintiff's decedent went to the emergency room and was examined by John Woods, a physician's assistant. During the examination, the plaintiff's decedent complained of a fever and chills, but did not mention any other specific symptoms. After the examination, Woods telephoned the defendant and informed him that the plaintiff's decedent had a 102.5 degree temperature and chills. At that time, the defendant diagnosed the plaintiff's decedent with a viral infection. The plaintiff's decedent was sent home and instructed to take Tylenol and to update the defendant during the weekend.

Later that evening, the plaintiff's decedent began vomiting and was experiencing pain in her right shoulder. She called her work unit at Bridgeport Hospital and was prescribed Roxicet, a pain reliever, by Wittaya Ruan, an anesthesiologist with whom she worked. After waking up on Saturday, December 9, 1995, the plaintiff's decedent telephoned the defendant, and informed him that her fever was 101.5 degrees and that she was nauseous and vomiting. During the conversation, the plaintiff's decedent also told the defendant that she had pain in her shoulder and that an orthopedic surgeon, who was treating her shoulder, had prescribed Roxicet to control the pain. The defendant recommended she stop taking the Roxicet because it potentially causes nausea, and suggested that she take Motrin and apply ice to relieve her shoulder pain.

The plaintiff's decedent called the defendant again on Sunday, December 10, 1995, and, in addition to reporting that she was experiencing a continuing fever, nausea and vomiting, reported that she had diarrhea. In response, the defendant prescribed another pain reliever and a suppository for nausea. The plaintiff's

decedent woke up early on Monday, December 11, 1995, and was rushed to the Bridgeport Hospital emergency room. Several hours later, at 5:55 a.m., she died from an untreated bacterial infection that caused her to suffer toxic shock syndrome.

In January, 1998, the plaintiff brought a negligence action against the defendant and Bridgeport Hospital. A jury trial commenced in November, 2002. Before and during the trial, the plaintiff claimed that the defendant was inappropriately arguing that the plaintiff's decedent had been contributorily negligent, without having affirmatively pleaded contributory negligence.[2] Initially, the plaintiff made an oral motion in limine to preclude the defendant from introducing any evidence of negligence of the plaintiff's decedent. The court denied the motion. After the close of evidence, the court held a charging conference in which the plaintiff requested that the court "charge out" contributory negligence.[3] The court denied the request and did not charge the jury on contributory negligence. After the jury instructions were given, the plaintiff again requested that the court charge the jury that the plaintiff's decedent is presumed, pursuant to General Statutes § 52-114,[4] to have been in

[2] The defendant did not plead any affirmative defenses in his answer.

[3] The plaintiff submitted the following request to charge: "I instruct you that there has been no claim made by the Defendant in this case that Patty Juchniewicz was herself negligent. Therefore, I instruct you as a matter of law that that she was not negligent and you are not to consider whether or not she was personally responsible for what occurred. Conn. Gen. Stat. § 52-114."

[4] The plaintiff's counsel orally requested: "I would also request the court to specifically charge the jury that there is no claim of contributory negligence in this case. I know that defense counsel at one point made a representation that the only claim that they were claiming was—was [the plaintiff's decedent's] responsibility was that she—she didn't—she misled the defendant on Saturday or didn't accurately represent facts to him on Saturday. But we've gone way beyond that now . . . that she should have known the significance of rigors, she should have gotten herself back to the [emergency room], that she should have, in essence, diagnosed her own shoulder, known that her shoulder pain was not from an exercise injury. It's just riddled throughout the case.

the exercise of reasonable care. The court again denied the plaintiff's requested charge. The plaintiff next filed a motion regarding contributory negligence, asking the court either to instruct the jury on the presumption regarding the exercise of due care of the plaintiff's decedent or, in the alternative, to allow the defendant to amend his answer to claim that the plaintiff's decedent had been contributorily negligent. The court denied the motion. After the jury returned a verdict in favor of the defendant, the plaintiff filed a motion to set aside the verdict, which the court denied. This appeal followed.

I

We first turn to the plaintiff's argument that the court improperly failed to instruct the jury that the plaintiff was entitled to the presumption, pursuant to § 52-114,[5] that the plaintiff's decedent was acting in the exercise of reasonable care. In essence, the plaintiff claims that he was entitled to the requested charge as a matter of law.

Because the interpretation of a statute, as well as its applicability to a given set of facts and circumstances, involves a question of law, our review is plenary. *Commissioner of Social Services* v. *Smith*, 265 Conn. 723, 734, 830 A.2d 228 (2003).

Our review of the record leads us to conclude that the court's determination not to give the requested instruction was a correct application of the law and

---

[5] General Statutes § 52-114 provides: "In any action to recover damages for negligently causing the death of a person, or for negligently causing personal injury or property damage, it shall be presumed that such person whose death was caused or who was injured or who suffered property damage was, at the time of the commission of the alleged negligent act or acts, in the exercise of reasonable care. If contributory negligence is relied upon as a defense, it shall be affirmatively pleaded by the defendant or defendants, and the burden of proving such contributory negligence shall rest upon the defendant or defendants."

was reasonably based on the evidence. We are unpersuaded by the plaintiff's contrary assertion that, under the language of the first sentence of § 52-114, the court should have instructed the jury that the plaintiff's decedent in this case should be presumed to have been acting reasonably because the first sentence of the statute does not exist in a vacuum and because the defendant had not put at issue the contributory negligence of the plaintiff's decedent. In construing the statute, our Supreme Court has stated that "[t]he provisions of the statute are not severable, but all its terms are intended to carry out one purpose, to place the duty of pleading and proving contributory negligence upon the defendant." *Hatch* v. *Merigold*, 119 Conn. 339, 343, 176 A. 266 (1935); see also *Petrillo* v. *Maiuri*, 138 Conn. 557, 563, 86 A.2d 869 (1952); *Borkowski* v. *Sacheti*, 43 Conn. App. 294, 326–27, 682 A.2d 1095, cert. denied, 239 Conn. 945, 686 A.2d 120 (1996). Thus, the presumption of a plaintiff's reasonable care is proper for the jury to consider only when a defendant affirmatively pleads contributory negligence. Cf. *Sady* v. *Liberty Mutual Ins. Co.*, 29 Conn. App. 552, 558, 616 A.2d 819 (1992).

In reaching that conclusion, we do not cover new decisional ground. *Borkowski* involved a medical malpractice case in which the defendant did not plead contributory negligence, but did introduce evidence tending to prove that the plaintiff's decedent had failed to attend to his own medical needs reasonably. *Borkowski* v. *Sacheti*, supra, 43 Conn. App., 315. On appeal, the plaintiff argued that the trial court improperly failed to instruct the jury that the plaintiff's decedent should be presumed to have been acting with reasonable care. Id., 316–17. We upheld the court's jury charge, reasoning that the statutory scheme of § 52-114 permits a jury instruction regarding the presumption of the plaintiff's

exercise of care only if contributory negligence has been affirmatively pleaded.[6] Id., 327.

Similarly, in this instance, the denial of the plaintiff's request to charge was proper because contributory negligence was outside the issues framed by the pleadings. "To be acceptable, a request to charge must be relevant to the evidence and the issues presented in court." (Internal quotation marks omitted.) Id. The issues in a case are framed by the pleadings, and the evidence proffered must be relevant to the issues raised in the pleadings. See *Telesco* v. *Telesco*, 187 Conn. 715, 720, 447 A.2d 752 (1982). In order for a defendant to assert a defense of contributory negligence, it must be raised as a special defense. Practice Book § 10-53. In this case, the defendant did not raise the special defense of contributory negligence. The jury instructions were consistent with the pleadings and the evidence presented, and therefore provided proper guidance for the jury to resolve the issues presented.

Accordingly, we conclude that the court properly refused the plaintiff's request to instruct the jury regarding the exercise of reasonable care of the plaintiff's decedent.

## II

We next review the plaintiff's claim that the court improperly failed to require the defendant to amend his answer to plead contributory negligence and that the court improperly failed to charge the jury on contributory negligence. The plaintiff filed a motion on Decem-

---

[6] In *Borkowski*, the trial court specifically denied the request because the parties had not argued contributory negligence during final arguments, contributory negligence was not part of the case and because "[General Statutes § 52-114] cannot be referred to in a vacuum [and] is only applicable and doesn't furnish any guidance to the jury unless there is an affirmative defense in the case." (Internal quotation marks omitted.) *Borkowski* v. *Sacheti*, supra, 43 Conn. App. 326.

ber 4, 2002, the day following closing arguments and jury instructions, requesting the court to allow the defendant to plead contributory negligence in order for the court to charge the jury on the issue of whether the plaintiff's decedent was responsible, in part, for her death. The court denied the motion and declined to instruct the jury regarding the negligence of the plaintiff's decedent. The plaintiff claims that the defendant consistently argued that the plaintiff's decedent acted negligently and that such negligence caused her death.[7] Consequently, the plaintiff claims, the court should have required the defendant to plead contributory negligence and to assume the burden of proof. With regard to that issue, our review of the record does not support the plaintiff's contention.

"The standard we use in reviewing evidentiary matters, including the sufficiency of the evidence to submit a claim to the jury, is abuse of discretion. . . . Accordingly, great weight is given to the trial court's decision

_____

[7] In his brief, the plaintiff claims that the defendant argued that the plaintiff's decedent was negligent in that she: "[1] failed to tell her health care providers on Friday that she had experienced true rigors (a sign that a bacterial infection has entered the bloodstream); [2] failed to tell her health care providers on Friday that her shoulder was painful; [3] chose to go to the emergency room, instead of [the defendant's] office, thereby depriving him of the benefit of examining her; [4] improperly obtained prescription pain medication on Friday; [5] misled or lied to [the defendant] on Saturday by telling him that she was being treated by an orthopedic surgeon for her shoulder injury and that he had prescribed the Roxicet (the evidence demonstrated that, in fact, [the plaintiff's decedent] never saw an orthopedic surgeon for her shoulder and that Dr. Ruan, an anesthesiologist, prescribed the Roxicet); [6] misled or lied to [the defendant] when she told him that her shoulder injury was not related to her present illness (the evidence was that, in fact, [the plaintiff's decedent's] shoulder was painful because that was where the bacterial infection had lodged); [7] failed to report to [the defendant] that her shoulder pain was her major, overriding complaint on Saturday and Sunday; [8] failed to tell [the defendant] about any change in condition of her shoulder over the weekend, including redness or swelling; [9] failed to call [the defendant] to report a worsening of her condition on Saturday or Sunday; [and 10] failed to take herself to the emergency room on Saturday or Sunday."

and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did. Issues that are not supported by the evidence should not be submitted to the jury." (Citation omitted; internal quotation marks omitted.) *Murray* v. *Taylor*, 65 Conn. App. 300, 328, 782 A.2d 702, cert. denied, 258 Conn. 928, 783 A.2d 1029 (2001). Overall, the court's jury instructions will be upheld when the "instructions were correct in the law, adapted to the issues in the case and provided sufficient guidance to the jury." *Blatchley* v. *Mintz*, 81 Conn. App. 782, 786, 841 A.2d 1203, cert. denied, 270 Conn. 901, 853 A.2d 519 (2004).

In denying the plaintiff's motion, the court concluded that the defendant had not argued or attempted to prove contributory negligence and therefore ruled that it would be improper to charge the jury on contributory negligence. The court did not abuse its discretion in reaching that conclusion. In the complaint, the plaintiff alleged that the defendant had failed "to exercise that degree of care and skill ordinarily and customarily used by health care providers" during his treatment of the plaintiff's decedent.[8] The defendant denied all the allegations of negligence and, at trial, was steadfast in his assertion that he had not been negligent. The defendant

---

[8] The complaint specifically alleged that the defendant:

"a. failed to adequately and properly care for, treat, examine, monitor and supervise the plaintiff's decedent;

"b. failed to timely diagnose and treat the plaintiff's decedent;

"c. failed to consult with other medical specialists particularly, infectious disease experts;

"d. failed to correlate the plaintiff's decedent's clinical picture with her past medical history;

"e. failed to adequately and properly assess the plaintiff's decedent's infectious state;

"f. failed to perform proper diagnostic tests;

"g. failed to institute antibiotic treatment in a timely fashion; and,

"h. failed to admit the plaintiff's decedent to a health care facility in a timely manner."

claimed that he had acted reasonably in the circumstances presented to him and that the circumstances consisted, in large measure, of a series of telephone conversations between himself and the plaintiff's decedent during which she made certain incorrect and incomplete representations to him regarding her symptoms and history of treatment.

In a medical malpractice case, the standard of care for a treating physician is outlined by General Statutes § 52-184c (a), which provides in relevant part: "The prevailing professional standard of care for a given health care provider shall be that level of care, skill and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers." The specific standard of care in each case is described to the jury by expert testimony. *Marchell* v. *Whelchel*, 66 Conn. App. 574, 582, 785 A.2d 253 (2001). An assessment of whether a physician met the standard of care includes a review of "all relevant surrounding circumstances" of the treatment. General Statutes § 52-184c (a); *Borkowski* v. *Sacheti*, supra, 43 Conn. App. 324–25. The circumstances relevant to the treatment include discussions between the patient and physician regarding the patient's symptoms and specific health concerns.

The plaintiff claims that the defendant improperly introduced evidence or argued that the plaintiff's decedent had failed to seek proper medical attention, and that she failed to tell her health care providers, including the defendant, that her chills were so severe that they constituted rigors and that her shoulder was increasingly painful, red and swollen. The plaintiff claims that this evidence was introduced in order to convince the jury that the plaintiff's decedent contributed to her death. We are unpersuaded. On the basis of our review of the record, we conclude that the defendant did not

advance a defense that the plaintiff's decedent had been contributorily negligent, but rather adduced evidence of the complaints, symptoms and treatment history provided by the plaintiff's decedent to the defendant during telephone conversations at different times during the weekend so that the jury could fairly assess whether he had acted reasonably under the particular factual circumstances he confronted. Contrary to the plaintiff's assertion, we conclude that the defendant properly used that evidence to support his position that, on the basis of representations of the plaintiff's decedent to him about her symptoms, complaints and course of treatment, he acted in accordance with the applicable standard of care.

The plaintiff also claims that the defendant improperly introduced evidence or argued that the plaintiff's decedent acted negligently when she obtained a prescription for Roxicet and then misled or lied to the defendant about obtaining the medication, that she was negligent when she misled or lied to the defendant when she told him that she was seeking treatment for her shoulder from an orthopedic physician who prescribed Roxicet, and that she acted negligently when she told the defendant that the shoulder injury was unrelated to the infection. The plaintiff's argument fails because the record discloses that this evidence, too, was utilized by the defendant not to prove the negligence of the plaintiff's decedent, but rather in support of the defendant's claim that he acted reasonably under the circumstances he faced. Specifically, the defendant argued that in light of the particular circumstances he faced, it was reasonable for him to have concluded that the plaintiff's decedent was being treated by an orthopedic surgeon and taking Roxicet for an unrelated and preexisting shoulder injury, and that the shoulder injury was not a symptom of infection.

After hearing the evidence and arguments, the court concluded that the defendant had not argued contributory negligence but, instead, had utilized the evidence of the representations of the plaintiff's decedent to him in support of his claim that he had acted reasonably. On the basis of the record, we agree with the court's conclusion and determine, therefore, that the court did not abuse its discretion by failing to require the defendant to amend the pleadings to assert the claim of contributory negligence and by failing to instruct the jury regarding contributory negligence.

### III

The plaintiff's final claim is that the court improperly denied his motion in limine to preclude the defendant from offering any evidence of the contributory negligence of the plaintiff's decedent. Prior to the start of trial, the plaintiff orally moved in limine for the court to prohibit the defendant from asking any questions that might elicit answers that attribute negligence to the plaintiff's decedent.[9] The court denied the motion, stating that it was "not going to rule out any such questions at this time." The plaintiff argues that the court's failure to preclude the defendant's inquiry into the negligence of the plaintiff's decedent was improper. We disagree.

"The trial court's ruling on the admissibility of evidence is entitled to great deference [and] will be over-

---

[9] In the oral motion, the plaintiff's attorney stated that "there may be questions that are asked during the course of this case that are directed toward the issue of placing some blame on the [plaintiff's decedent] herself for not having sought alternative medical care. And there is no claim in the case for loss of—for contributory negligence, comparative negligence.

"So, any questions directed at blaming the [plaintiff's decedent] for—for her not being more diligent to disregard the doctor's orders and get herself to the hospital anyway, anything of that nature, placing blame on the [plaintiff's decedent], would, again, not be material to any of the issues in this case. There's no claim for comparative negligence."

turned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . When reviewing claims under an abuse of discretion standard, the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness . . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Citations omitted; internal quotation marks omitted.) *PSE Consulting, Inc.* v. *Frank Mercede & Sons, Inc.*, 267 Conn. 279, 328–29, 838 A.2d 135 (2004).

Evidence is admissible if it is relevant to the issues raised in the pleadings. Conn. Code Evid. § 4-1, commentary; *Borkowski* v. *Sacheti*, supra, 43 Conn. App. 321–22. "Relevant evidence is evidence which has a logical tendency to aid the trier of fact in the determination of an issue. . . . No precise and universal test of relevancy is furnished by the law, and the question must be determined in each case according to the teachings of reason and judicial experience. . . . It has been said that [o]ne fact is relevant to another if in the common course of events the existence of the one, alone or with other facts, renders the existence of the other either more certain or more probable." (Citations omitted; internal quotation marks omitted.) *Borkowski* v. *Sacheti*, supra, 321.

As previously stated, in a medical malpractice case, the standard of care by which a defendant's conduct should be measured is influenced by the facts and circumstances surrounding a patient's treatment. In *Borkowski*, the court denied a similar motion in limine brought by the plaintiff to exclude the defendant from introducing any evidence that the plaintiff's decedent was a noncompliant patient who caused his death by failing to attend to his medical needs. Id., 325. The

plaintiff argued that such evidence was inadmissible absent a plea of contributory negligence. Id., 315. On appeal, we stated that the defendant has "the right to introduce evidence of those relevant and material facts which logically tend to prove the issues involved and which is not excluded by some rule of law." (Internal quotation marks omitted.) Id., 323, quoting *Ayers Co.* v. *Novelty Textile Mills, Inc.*, 168 Conn. 577, 579, 362 A.2d 969 (1975). We held that several relevant circumstances, including the events of the week during which the death occurred and the course of the treatment, "advance[d] the inquiry of the existence of the negligence alleged." *Borkowski* v. *Sacheti*, supra, 43 Conn. App. 324.

In this case, the plaintiff attempted to exclude any evidence that placed any blame on the plaintiff's decedent. As we have noted, however, a patient's actions and statements to the treating physician are relevant to an assessment of whether a medical care provider has comported with the applicable standard of care. In this case, the evidence of the conduct of the plaintiff's decedent was relevant to the defendant's contention that he met the applicable standard of care. We follow the reasoning set forth in *Borkowski* and conclude that the court did not abuse its discretion in denying the plaintiff's motion in limine.

The judgment is affirmed.

In this opinion the other judges concurred.